FILED

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

2010 JUL -9 P 3:47

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:10CV765 (GBL\TRJ) |
| ) | |
| ISHMAEL JONES, a pen name, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

### INTRODUCTION

The United States of America brings this civil action for breach of contract and fiduciary duty against defendant Ishmael Jones (a pen name), a former employee of the Central Intelligence Agency (the "CIA" or the "Agency"), who published a book without the Agency's permission and in violation of his Secrecy Agreement.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1345.

2. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §1391(b)(2).

### PARTIES

3. Plaintiff is the United States of America.

4. Defendant Ishmael Jones is a United States citizen who, upon information and

belief, resides in the state of California. Defendant Jones is a former employee of the CIA, an agency of the United States of America, which has its headquarters in Langley, Virginia.

## FACTUAL ALLEGATIONS

5. The CIA was established by section 104(a) of the National Security Act of 1947 (the "Act"), as amended, 50 U.S.C. § 403-4. Pursuant to section 104(b) of the Act, 50 U.S.C. § 403-4(b), the function of the CIA is to assist the Director of the CIA in carrying out his responsibilities.

6. Under the direction of the Director of National Intelligence, pursuant to section 102A(i) of the Act, as amended, 50 U.S.C. § 403-1(i), and in accordance with section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 403g, and sections 1.3(a)(5) and 1.5(h) of Executive Order 12333, as amended, the Director of the CIA is responsible for protecting CIA intelligence sources and methods from unauthorized disclosure.

7. Personnel employed by the CIA, before beginning their official duties, as a condition of employment by the CIA and as a condition of being granted access to classified information, are required to execute a Secrecy Agreement, such as is attached hereto as Exhibit A. This requirement is in furtherance of the Director of the CIA's responsibility to protect intelligence sources and methods from unauthorized disclosure.

8. On July 19, 1989, defendant Jones – in his true name – entered into a Secrecy Agreement with the CIA (referred to herein as the "Secrecy Agreement" or the "Agreement"). A true and correct redacted copy of defendant Jones' Secrecy Agreement is attached hereto as Exhibit A.

9. Defendant Jones voluntarily, willingly, and knowingly entered into the Secrecy

Agreement, which was executed as a condition of his employment by the CIA and as a condition of him being granted access to classified information and other information which, if disclosed in an unauthorized manner, would jeopardize intelligence activities of the United States Government.

10. As a condition of employment, and under the terms of the Secrecy Agreement, defendant Jones was required never to disclose information or material obtained in the course of employment or other service with the CIA that is classified or that reveals classifiable information to any person not authorized by the CIA to receive such information or material. Secrecy Agreement ¶ 3.

11. As a condition of employment, and under the terms of the Secrecy Agreement, defendant Jones was required to submit to the CIA for its review all information or materials, including works of fiction, which contain any mention of intelligence data or activities, or contain data which may be based upon classified information, which he contemplates disclosing publicly or which he has actually prepared for public disclosure, either during his employment with the CIA or at any time thereafter, prior to discussing it with or showing it to anyone who is not authorized to have access to it. Defendant Jones was further required to receive written permission from the CIA before taking any steps toward public disclosure. Secrecy Agreement ¶ 5.

12. Defendant Jones agreed in the Secrecy Agreement that the obligations undertaken by him in executing the Secrecy Agreement would remain valid and binding upon him after the termination of his employment with the CIA, unless he obtained a written release from the CIA. Secrecy Agreement ¶ 13.

13. Defendant Jones also agreed in the Secrecy Agreement that all classified information acquired by him during the course of his employment was the property of the United States Government, Secrecy Agreement ¶ 7; that if he violated any of the terms of the Agreement, the Government could institute a civil proceeding seeking compensatory damages or other appropriate relief, *id.* ¶ 10; that the United States Government was entitled to any royalties or other payments received by defendant Jones as a result of publishing information in breach of the Agreement, *id.* ¶ 12; and that there were established procedures for reporting any concerns about unlawful or improper intelligence activities. *Id.* ¶ 9.

14. Defendant Jones signed additional nondisclosure agreements during his employment with the CIA and affirmed upon separating from the CIA his continuing obligation to protect classified information.

15. At no time has defendant Jones received a release from the terms and conditions of his Secrecy Agreement.

16. During his employment with the CIA, defendant Jones was assigned to various positions of trust and was granted regular access to classified information, including information regarding intelligence sources and methods. In assigning defendant Jones to such positions and granting him access to such information, the CIA relied on the expectation that defendant Jones would respect the rights and obligations created by the Secrecy Agreement and his fiduciary duties, including the prepublication review requirement.

17. Pursuant to Agency regulation, the CIA's Publications Review Board ("PRB") is the Agency body charged with reviewing, coordinating, and formally approving in writing all proposed nonofficial, personal publications that are submitted for prepublication review.

18. Pursuant to Agency regulation, if the PRB denies all or part of a proposed nonofficial publication, the author may submit additional material in support of publication and request reconsideration by the PRB. In the event that the PRB denies the request for reconsideration, the author may appeal that decision administratively.

19. On or about April 10, 2007, defendant Jones submitted a manuscript containing intelligence-related information to the PRB for prepublication review.

20. On or about May 22, 2007, the PRB informed defendant Jones that it could not approve any portion of his manuscript for publication.

21. On or about July 27, 2007, defendant Jones submitted a rewritten version of his manuscript to the PRB for prepublication review.

22. On or about December 7, 2007, the PRB notified defendant Jones that it had completed its review of his rewritten manuscript and that it was only approving certain portions of the manuscript for publication and denying publication approval of the remainder of the manuscript, even using a pen name.

23. On or about January 8, 2008, defendant Jones wrote to the PRB regarding its decision denying publication approval and the extent of that denial.

24. On or about February 5, 2008, the PRB informed defendant Jones that it was treating his January 8, 2008 correspondence as an appeal of its decision, that an appeal could take some time, and that defendant Jones was bound by his Secrecy Agreement not to publish the manuscript or share it with others unless and until the PRB approved it for publication.

25. On or about March 8, 2008, defendant Jones acknowledged in writing to the PRB that an appeal of his prepublication review request was pending and might take some time.

26. Before the CIA ruled on his appeal, defendant Jones – through publisher Encounter Books – published his manuscript as a book entitled "The Human Factor: Inside the CIA's Dysfunctional Intelligence Culture," under the pen name Ishmael Jones.

27. Defendant Jones did not obtain approval from the CIA to publish his book.

28. Defendant Jones did not seek judicial review of the PRB's decision disapproving his manuscript for publication.

29. On or about January 7, 2010, defendant Jones published an editorial in the Washington Times entitled "World Watch: Intelligence Reform is the President's Urgent Challenge," which pertained to intelligence activities. He did not submit it to the PRB for prepublication review.

## CAUSE OF ACTION

### Breach of Contract and Fiduciary Duty

30. All preceding paragraphs are incorporated by reference, as if fully set forth herein.

31. Defendant Jones voluntarily, willingly, and knowingly entered into a contractual agreement with the United States of America when he signed his Secrecy Agreement and agreed to be bound by its terms and conditions. Among the Secrecy Agreement's terms and conditions was an express requirement that defendant Jones submit any intelligence-related manuscript to the CIA for prepublication review and to refrain from publishing any such manuscript until he received written permission to do so from the CIA.

32. Defendant Jones knowingly, willfully, and deliberately breached his Secrecy Agreement both by disclosing his manuscript to Encounter Books and by causing his manuscript to be published before the completion of the CIA's prepublication review process, without

receiving written permission from the CIA, and in defiance of the CIA's express, written denial of permission.

33. Under both the common law and the Secrecy Agreement, defendant Jones had a fiduciary relationship with the United States of America and the CIA based on trust and special confidence that derived from the facts that defendant Jones was employed by the CIA, transacted business on behalf of the CIA, was given regular access to classified national security information, and entered into the Secrecy Agreement.

34. Thus, defendant Jones owed to the United States and the CIA a fiduciary duty of loyalty to protect information pertaining to intelligence sources and methods from unauthorized disclosure, to submit to the CIA for its review any intelligence-related materials intended for publication, and to not publish or disseminate intelligence-related information unless and until the CIA had completed its prepublication review process and defendant Jones had received written approval from the CIA.

35. Defendant Jones breached his fiduciary duties by publishing the book entitled "The Human Factor: Inside the CIA's Dysfunctional Intelligence Culture" without first allowing the CIA to complete its prepublication review process and without first obtaining written permission to do so from the CIA.

36. As a direct and proximate result of defendant Jones' breach of his contractual and/or fiduciary duties, the United States has been damaged, *inter alia*, by the undermining of confidence and trust in the CIA and its prepublication review process, thereby hampering the ability of the Agency and of the Director of the Agency to perform their respective statutory duties, and defendant Jones has been unjustly enriched in the amount of profits, advances,

royalties, and other advantages resulting from the unauthorized publication of his book.

37. Defendant Jones has engaged in a course of conduct evidencing a propensity to commit further breaches of his contractual and/or fiduciary duties and to cause further damage to the United States, including irreparable injury for which the United States has no adequate remedy at law.

WHEREFORE, the United States of America respectfully requests that the Court award the following relief:

A. Declare that defendant Jones has breached his contract – the Secrecy Agreement – and his fiduciary obligations;

B. Impose a constructive trust over, and require an accounting of, all monies, gains, profits, royalties, and other advantages that defendant Jones has derived, or will derive in the future, from the publication, sale, serialization, or republication in any form, including any movie rights, of the work entitled "The Human Factor: Inside the CIA's Dysfunctional Intelligence Culture," whether or not such gains remain in defendant Jones' possession;

C. Require defendant Jones to relinquish the proceeds accounted for to the United States;

D. To the extent that any such revenues, gains, royalties or other advantages are no longer in defendant Jones' possession, award plaintiff monetary damages for proceeds wrongfully obtained by defendant Jones as a result of his breach;

E. Permanently enjoin defendant Jones from any further violation of his Secrecy Agreement obligations including, but not limited to, authorizing, consenting to, or in any way permitting the republication of the work entitled "The Human Factor: Inside the CIA's

Dysfunctional Intelligence Culture," or publicly discussing its contents; and

F. Grant to the United States such other relief as the Court may deem just and proper, including but not limited to, plaintiff's costs herein.

Dated: July 9, 2010

Respectfully submitted,

| | |
|---|---|
| TONY WEST<br>Assistant Attorney General | NEIL H. MACBRIDE<br>United States Attorney |
| VINCENT M. GARVEY<br>Deputy Branch Director<br>Federal Programs Branch | |
| | By: *Kevin J. Mikolashek* |
| MARCIA BERMAN<br>Senior Counsel<br>Federal Programs Branch<br>U.S. Department of Justice<br>20 Massachusetts Ave., N.W.<br>Washington, D.C. 20530<br>Tel.: (202) 514-2205<br>Fax: (202) 616-8470 | KEVIN J. MIKOLASHEK<br>Assistant United States Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Tel.: (703) 299-3809<br>Fax: (703) 299-3983<br>Email: kevin.mikolashek@usdoj.gov |

Attorneys for Plaintiff.