IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10CV765 |
| | ) | |
| ISHMAEL JONES, a pen name, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF DEFENDANT ISHMAEL JONES

Defendant Ishmael Jones ("Defendant" or "Mr. Jones"), by counsel, as and for his

Answer to the Complaint of Plaintiff, United States of America (the "United States"), states as

follows:

### INTRODUCTION

Mr. Jones admits that he is a former employee of the Central Intelligence Agency ("CIA")

and that he published a book entitled *The Human Factor: Inside the CIA's Dysfunctional*

*Intelligence Culture*.  Mr. Jones denies all remaining or inconsistent allegations set forth in the

unnumbered paragraph under the heading "Introduction."

### JURISDICTION AND VENUE

1.      Mr. Jones admits that this Court has subject matter jurisdiction pursuant to 28

U.S.C. § 1345.

2.      Mr. Jones denies that venue is proper in the Eastern District of Virginia.

## PARTIES

3.      Mr. Jones admits the allegations of ¶ 3 of the Complaint.

4.      Mr. Jones admits the allegations of ¶ 4 of the Complaint.

## FACTUAL ALLEGATIONS

5.      The allegations of ¶ 5 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

6.      The allegations of ¶ 6 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

7.      Mr. Jones is without sufficient knowledge or information to either admit or deny the allegations of ¶ 7 of the Complaint and, therefore, denies the same.

8.      Mr. Jones admits that he executed a number of documents prior to and during his employment with the CIA.  However, Mr. Jones was not allowed to retain these documents.  As a result, Mr. Jones is without sufficient knowledge or information to either admit or deny the allegations of ¶ 8 of the Complaint and, therefore, specifically denies the same.

9.      Mr. Jones admits that he executed a number of documents prior to and during his employment with the CIA.  However, Mr. Jones was not allowed to retain these documents.  As a result, Mr. Jones is without sufficient knowledge or information to either admit or deny the allegations of ¶ 9 of the Complaint and, therefore, specifically denies the same.

10.      The allegations of ¶ 10 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

11.      The allegations of ¶ 11 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

12.     Mr. Jones is without sufficient knowledge or information to either admit or deny the allegations of ¶ 12 of the Complaint and, therefore, specifically denies the same.

13.     Mr. Jones is without sufficient knowledge or information to either admit or deny the allegations of ¶ 13 of the Complaint and, therefore, specifically denies the same.

14.     Mr. Jones is without sufficient knowledge or information to either admit or deny the allegations of ¶ 14 of the Complaint and, therefore, specifically denies the same.

15.     The allegations of ¶ 15 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

16.     Mr. Jones admits that he was exposed to classified information during the time he was employed by the CIA.  Mr. Jones denies any and all other remaining or inconsistent allegations of ¶ 16 of the Complaint.

17.     Mr. Jones admits the allegations of paragraph 17 of the Complaint.

18.     The allegations of ¶ 18 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

19.     Mr. Jones admits that he submitted the Manuscript for his book to the CIA's Publications Review Board (the "PRB") and that the Manuscript contained unclassified information relating to his employment with the CIA.  Mr. Jones denies any and all other remaining or inconsistent allegations of ¶ 19 of the Complaint.

20.     Mr. Jones admits the allegations of ¶ 20 of the Complaint.

21.     Mr. Jones admits the allegations of ¶ 21 of the Complaint.

22.     Mr. Jones admits the allegations of ¶ 22 of the Complaint.

23.     Mr. Jones admits the allegations of ¶ 23 of the Complaint.

24.     Mr. Jones admits that the PRB claimed it was treating his correspondence as an appeal.  Mr. Jones denies any and all other remaining or inconsistent allegations of ¶ 24 of the Complaint.

25.     Mr. Jones denies the allegations of ¶ 25 of the Complaint.

26.     Mr. Jones admits that he published his book, through the publisher Encounter Books, under the pen name Ishmael Jones.  Mr. Jones denies any and all other remaining or inconsistent allegations of ¶ 26 of the Complaint.

27.     Mr. Jones admits that some portions of his book were approved by the PRB for publication and that other portions were initially denied.  However, the PRB never informed Mr. Jones of its final ruling on publication and it never acted on his appeal.  Mr. Jones denies any and all other remaining or inconsistent allegations of ¶ 27 of the Complaint.

28.     Mr. Jones admits that he has not yet sought judicial review of the PRB's initial ruling on publication.  Mr. Jones denies that he was provided with a final decision by the PRB.  Mr. Jones denies any and all other remaining or inconsistent allegations of ¶ 28 of the Complaint.

29.     Mr. Jones admits the Washington Times published an article entitled "*World Watch: Intelligence Reform is the President's Urgent Challenge*" and that Mr. Jones drafted the article.  Mr. Jones further admits that he did not submit the article to the PRB.  Jones denies any and all other remaining or inconsistent allegations of ¶ 29 of the Complaint and specifically denies any allegation that his Washington Times article contained any classified information.

## CAUSE OF ACTION

Breach of Contract and Fiduciary Duty

30.     Mr. Jones repeats and realleges his answers to ¶¶ 1-29 of the Complaint as if set forth verbatim herein.

31.     The allegations of ¶ 31 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

32.     The allegations of ¶ 32 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

33.     The allegations of ¶ 33 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

34.     The allegations of ¶ 34 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

35.     The allegations of ¶ 35 of the Complaint state a legal conclusion to which Mr. Jones is not required to respond.  To the extent a response is required, the allegations are denied.

36.     Mr. Jones denies the allegations of ¶ 36 of the Complaint.

37.     Mr. Jones denies the allegations of ¶ 37of the Complaint.

38.     Mr. Jones denies all allegations in the Complaint not specifically admitted herein.

39.     Mr. Jones denies that Plaintiffs are entitled to any relief set forth in their Prayer for Relief.

WHEREFORE, having fully answered, Mr. Jones respectfully requests that the Plaintiff take nothing by way of its Complaint; that Mr. Jones be granted judgment in his favor,

dismissing the Complaint; that Mr. Jones be awarded his reasonable costs and attorneys' fees; and for such other and further relief as the Court deems just and equitable.

## AFFIRMATIVE DEFENSES

Mr. Jones, for his affirmative defenses to the causes of action stated in the Complaint, alleges and states as follows:

1. The Complaint fails to state a cause of action upon which relief may be granted.

2. The Complaint and/or the relief sought therein are barred by estoppel.

3. The Complaint and/or the relief sought therein are barred by waiver.

4. The Complaint and/or the relief sought therein are barred by the equitable doctrine of unclean hands.

5. The Complaint and/or the relief sought therein are barred due to Mr. Jones's failure to breach any agreement between the Parties.

6. The Complaint and/or the relief sought therein are barred due failure of consideration.

7. The Complaint and/or the relief sought therein are barred due to Plaintiff's failure to perform a condition precedent.

8. The Complaint and/or the relief sought therein are barred due to Plaintiff's prior material breach of the agreement(s) between the Parties.

9. The Complaint and/or relief sought therein are barred due to Mr. Jones's substantial performance of his duties under the agreement(s) between the Parties.

10. The Complaint and/or the relief sought therein are barred due to the Plaintiff's lack of damages.

11. The Complaint and/or the relief sought therein are barred because Mr. Jones disclosed no classified information and the Government has no contractual or constitutional right to bar the publication of non-classified information.

12. The Secrecy Agreement allegedly signed by Mr. Jones, to the extent that it can be construed to restrict the publication of information not properly classified or already publicly disclosed, is vague, overbroad, unenforceable and in violation of the First Amendment to the Constitution.

13. The Secrecy Agreement attached to the Complaint is a form agreement similar to that of many such agreements signed by Jones and that the form agreement attached to the Complaint has been superseded by other agreements not attached to the Complaint.

WHEREFORE, having fully answered and asserted his affirmative defenses, Mr. Jones respectfully requests that the Plaintiff take nothing by way of the Complaint; that Mr. Jones be granted judgment in his favor, dismissing the Complaint; that Mr. Jones be awarded his reasonable costs and attorneys' fees; and for such other and further relief as the Court deems just and equitable.

## COUNTERCLAIMS

## PARTIES

1.     Defendant/Counter-Plaintiff, Ishmael Jones, is a United States citizen who resides in the State of California.   Mr. Jones is a former employee of the CIA, an agency of the United States of America, which has its headquarters in Langley, Virginia.

2.     The Plaintiff/Counter-Defendant is the United States of America.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 5 U.S.C.

§ 702 and 28 U.S.C. § 1331.  This Court also has original jurisdiction over this action pursuant to

28 U.S.C. § 1346.

4.      Venue is proper in the Eastern District of Virginia Pursuant to 28 U.S.C. §§

1391(b)(2)-(3).

5.      This Court is authorized to provide declaratory relief under the Declaratory Judgment

Act, 28 U.S.C. §§ 2201-02.  Mr. Jones seeks a declaration pursuant to the Federal Declaratory

Judgment Act, 28 U.S.C. § 2201, the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, the All

Writs Act, 28 U.S.C. § 1651, the CIA's internal regulations, and the First Amendment to the

Constitution of the United States, that Plaintiff/Counter-Defendant has unlawfully imposed a prior

restraint upon Mr. Jones by infringing upon his rights to publish and/or republish the Manuscript.

## FACTS

### The Hiring of Mr. Jones and the Secrecy Agreements

6.      Mr. Jones was hired by the CIA in the late 1980s.

7.      The hiring process took approximately one year.

8.      During the hiring process, Mr. Jones signed a number of contracts that he was not

allowed to retain.

9.      One of the contracts Mr. Jones signed during the hiring process was a secrecy

agreement.

10.     Mr. Jones signed a number of revised secrecy agreements throughout his employment with the CIA (the "Secrecy Agreements").  He was not allowed to retain copies of the Secrecy Agreements.

### Mr. Jones's Career with the CIA

11.     During his time with the CIA, Mr. Jones operated as a deep-cover officer.

12.     In this role, Mr. Jones conducted highly classified operations and was responsible for recruiting foreign agents and assets.

13.     Mr. Jones served honorably and with distinction as a CIA officer in multiple, consecutive, and successful foreign assignments for over 15 years.

14.     During these operations, Mr. Jones dealt with hundreds of people in the Middle East and in the former Soviet republics.

15.     These contacts provided secrets to the United States, especially on terrorist organizations, nuclear weapons programs, and organized crime.  In his work for the CIA, Mr. Jones was able to determine that biological and chemical weapons pose a relatively insignificant threat compared against the nuclear threat, especially in target cities such as Washington, D.C.  It was the intention of Mr. Jones in publishing his book to highlight the significant threat posed by nuclear weapons, which he does not believe is being adequately addressed by the Government.

16.     Should Mr. Jones's identity become known, the lives of these contacts would be at risk.

17.     Jones resigned from the CIA.

**Mr. Jones Submits His Manuscript to the PRB**

18.    Following his resignation, Mr. Jones began drafting the Manuscript of his book (the "Manuscript").

19.    Once completed, on April 10, 2007, Mr. Jones submitted his Manuscript to the PRB under the title *Bureaucratic Obstacles to National Security*.

20.    As noted in his submission, the Manuscript contained "no classified information."

21.    By letter dated May 22, 2007, <span style="color:red">Redacted</span>                  , from the PRB, notified Mr. Jones that his Manuscript was not approved for publication.  It is believed that the employees Mr. Jones interacted with at the PRB, including <span style="color:red">Redacted</span>, used aliases and a false address.

22.    In rejecting the Manuscript, the PRB did not claim that it contained any classified information.

23.    Rather, the PRB noted that publication "[w]ould reveal information that is damaging to the organization [CIA] and its mission because it parallels your association with and work for the organization [CIA]."

24.    The PRB also noted that the PRB believed the Manuscript "[c]ould be rewritten in such a way that would not cause harm…" and offered to discuss the matter with Mr. Jones.

25.    The blanket rejection contained no detailed facts regarding the risk to the CIA, a benefit afforded to nearly all other authors.

26.    Mr. Jones responded to the PRB's rejection, by letter, on June 1, 2007.

27.    In his response, Jones requested the PRB provide a detailed description of "passages in which you indicate in a track changes document, with strikeouts and suggested additions, adding

as footnotes or comments…your explanation of what breaches to national security are represented by each passage."

28.    Mr. Jones went on to note that he had read "all memoirs published by current and former employees…" of the CIA and that "[t]he depth of operational information revealed in these memoirs often startled me, and I ensured that no such detail would exist in my Manuscript."

29.    Mr. Jones also indicated his belief the PRB was not properly fulfilling its duty to review Manuscripts for classified information, instead acting as a censor of Manuscripts critical of the CIA.

30.    Mr. Jones promised that if the PRB let him know what inappropriate operational details were included in his book he would remove them.

### Mr. Jones Rewrites His Manuscript at the PRB's Instruction

31.    After submitting his June 1, 2007, letter, Mr. Jones entered into discussions with the PRB as to what steps he might take to obtain publication approval.

32.    In these conversations, the PRB stated that they did not object to any specific elements of the Manuscript, but were concerned about the possibility that the Manuscript could be connected to Mr. Jones's true name.

33.    The PRB then suggested that Mr. Jones rewrite his Manuscript to reflect a third-person narrative, rather than the first-person narrative found within the original.

34.    If such a rewrite occurred, the PRB indicated that it would grant publication approval.

35.    Mr. Jones agreed to do so and, after painstakingly re-writing his Manuscript, submitted his Manuscript to the PRB for review.

- 11 -

36. Once again, by letter dated December 7, 2007, Redacted notified Mr. Jones that his full Manuscript would not be approved for publication by the PRB.

37. While the PRB agreed to the publication of a few paragraphs of the Manuscript, the majority of it was rejected, leaving the work unpublishable.

38. As before, in rejecting Mr. Jones's Manuscript, the PRB did not state that any confidential information had been included.

39. Instead, the PRB noted that publication "[o]f the remaining material would reveal information that is damaging to the organization and its mission."

40. The PRB also suggested that publication would "[r]eveal sensitive information about actual cases and methods known to you while you worked for the organization."

### The "Appeal"

41. Responding to the PRB's second rejection of his Manuscript, Mr. Jones drafted and submitted a letter dated January 8, 2008.

42. In his letter, Mr. Jones repeated his request for review and stated "[i]f the PRB can identify any classified information in the Manuscript then I will take it out."

43. Continuing, Mr. Jones explained that he "carefully studied the Manuscript to make sure it containe[d] no classified or secret information and to make sure it reveal[ed] no sources or methods."

44. Mr. Jones also reasserted his belief that the "PRB recognize[d] the Manuscript contain[ed] no classified information and s[ought] to block the Manuscript solely because [it] is highly critical of the organization."

45.    By letter dated February 5, 2008, the PRB responded that it had received Mr. Jones's January 8, 2008 letter and was treating it as an appeal.

46.    The PRB also stated that "[a] thorough and fair appeal may take some time as this must be reviewed by the organization's senior management."

47.    Mr. Jones submitted additional correspondence that requested clarification as to what classified information the Manuscript contained.

48.    Mr. Jones never received a ruling on his "appeal."

### Jones Publishes the Manuscript

49.    In the summer of 2008, more than six months after Mr. Jones's appeal, Mr. Jones published the Book.

50.    The Book is highly critical of CIA management and outlines numerous instances of waste, fraud, and abuse by the CIA, but contains no classified information.

51.    More than two years after publication, on September 22, 2010, Mr. Jones was served with the Summons and Complaint in this action.

### COUNT I

(Declaratory Judgment – First Amendment Violations)

52.    Mr. Jones realleges the facts set forth in ¶¶ 1 - 51 as if fully set forth herein.

53.    Mr. Jones brings this claim pursuant to 28 U.S.C. §§ 2201-02 and 5 U.S.C. §§ 701 *et. seq.*

54.    Mr. Jones properly submitted his Manuscript to the CIA for pre-publication review pursuant to the terms of the Secrecy Agreements.

55. The Manuscript submitted to the CIA for pre-publication review did not contain any classified information.

56. Upon review, the CIA did not discover any classified information within the Manuscript and only expressed concerns that it would reveal information that would be damaging to the CIA.

57. The CIA may not deny publication of a Manuscript unless such Manuscript contains classified information.

58. Despite failing to identify any classified information within the Manuscript, the CIA denied Mr. Jones the right to publish his Manuscript.

59. Such denial was an unlawful and unconstitutional attempt to censor Mr. Jones's publication of a book that is critical of CIA management.

60. The CIA's denial was not made for any proper purpose and did not comply with the CIA's internal regulations.

61. Through the filing of this action, the CIA continues to attempt to censor Mr. Jones and deny him the right to publish his Manuscript.  Mr. Jones also believes that this lawsuit is being used as a vehicle to reveal his true identity, further causing him harm.

62. The CIA cannot establish any harm to national security arising from Mr. Jones's publication of his Manuscript.

63. The CIA cannot and has not demonstrated the existence of substantial government interests which would enable them to prohibit the publication of Mr. Jones's Manuscript.

64.    By denying his right to publication and by now seeking to prevent the republication of his Manuscript, the CIA has (and is seeking to) impose unreasonable restrictions on Mr. Jones's expressive activities, which are protected by the First Amendment.

65.    The restrictions imposed and sought by the CIA are unduly vague and not narrowly confined to avoid infringement of Jones's First Amendment rights.  Defendants have unnecessarily attempted to restrict his speech in a way that does not serve to protect a substantial government interest.

66.    The CIA has failed to show that Jones's First Amendment right to publish is outweighed by any legally proper interest of the CIA in efficiently carrying out its respective mission by minimizing harms that are real.

67.    Because the CIA has and seeks impermissibly to infringe upon Mr. Jones's right to publish his Manuscript, Mr. Jones seeks a declaration that the CIA has violated his First Amendment rights.

68.    Mr. Jones has suffered actual adverse and harmful effects from the CIA's actions, including, but not limited to, a delay in being able to publish his novel, causing him to withhold republication of his novel pending resolution of this dispute, and/or lost or jeopardized present or future financial opportunities, which impair his respective contractual obligations and his ability to serve the public.

69.    A declaration from the Court regarding the unclassified or unclassifiable nature of the content of his Manuscript is required to avoid the threat and effect of possible civil or criminal penalties against Jones arising from the past and future publication of his Manuscript.

## JURY DEMAND

Mr. Jones demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Mr. Jones respectfully requests that the Court:

(a) Declare that his Manuscript does not contain any properly classified information;

(b) Declare that Mr. Jones did not breach the Secrecy Agreements;

(c) Declare that Mr. Jones is free to use the information within the Manuscript;

(d) Declare that Mr. Jones has a First Amendment right to publish the information within the Manuscript;

(e) Declare that the CIA has violated Mr. Jones's First Amendment right to publish the information within the Manuscript;

(f) Declare that the CIA has violated its internal regulations governing prepublication review;

(g) Issue a permanent injunction to block the United States from restraining the publication of the Manuscript and from taking steps to reveal Mr. Jones's true identity;

(h) Enjoin the United States from initiating further proceedings (either civil or criminal) against Mr. Jones for future publication of the Manuscript;

(i) Award Mr. Jones the costs of this action and reasonable attorneys fees under the Equal Access to Justice Act or other applicable law; and

(j) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

ISHMAEL JONES

_____/s/_____
Laurin H. Mills (VSB No. 79848)
C. Matthew Haynes (VSB No. 77896)
LECLAIRRYAN, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia  22314
Telephone:  (703) 647-5903
Facsimile:   (703) 647-5959
laurin.mills@leclairryan.com
matthew.haynes@leclairryan.com
*Counsel for Defendant Ishmael Jones*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of February 2011, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the parties listed below:

Kevin J. Mikolashek
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
*Counsel for Plaintiff United States*
*of America*


\_\_\_\_/s/_____
C. Matthew Haynes (VSB No. 77896)
LECLAIRRYAN, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia  22314
Telephone:  (703) 647-5919
Facsimile:  (703) 647-5989
matthew.haynes@leclairryan.com
*Counsel for Defendant Ishmael Jones*